All right, I hear lots of beeps. Our fourth case for this morning is Todd Kurtzhals v. County of Dunn. And we should have Mr. Reinhardt and Mr. Wistrom. Yes, yes, good morning. All right, very good. So Mr. Reinhardt, you may proceed. Thank you, Your Honor. May it please the court, my name is Pete Reinhardt and I represent Todd Kurtzhals in this case. There are really two separate legal issues, although they are somewhat related, at issue in this appeal. The first issue is whether or not Dunn County violated the Americans with Disabilities Act by requiring a fitness for duty evaluation for Sergeant Kurtzhals. The ADA requires that medical exams, if they are requested, be job-related and consistent with business necessity. And the case law tells us the burden of proof on this issue is on Dunn County to prove job-related and consistent with business necessity by significant evidence that this is a high burden. To meet the burden, according to the case law, Dunn County has to establish, one, a reasonable belief, two, based on objective evidence available or reasonably available, three, that the medical condition will impair an employee's ability to perform the essential functions of the job or will pose a threat. Case law also tells us what is relevant evidence with respect to the burden. An employer's standard practice with respect to medical evaluations is relevant evidence as to the inquiry. Here, in the present case, it's undisputed that the Dunn County Sheriff's Department did not have a standard practice regarding post-employment medical exams. There was no policy or procedure. Could I ask you, Mr. Reinhart, there is this incident with Reid, if that's how you pronounce his name. And, you know, both parties, I'll assume, are raising their voices, although it's Mr. Kurtzels who says, you know, let's take it out, you know, we're going to have to take it outside if this doesn't stop or words to that effect. Given issues of violence, I'm having trouble seeing why a fitness for duty exam isn't job-related and consistent with business necessity for somebody with a public safety job such as Mr. Kurtzels. Even if the county had not been in the habit of doing this very often, why were they disabled from thinking this? And I don't disagree with you, Judge. That leads to the second relevant evidence, and that is whether or not there's a differential application of a medical examination requirement. We have two people involved in the same incident. Both are subject to the same rules of conduct. We have the same decision-maker involved with both employees and both engaged in similar conduct. Mr. Kurtzels, what? The county pushes back a little bit on that last point. They regarded Kurtzels' direct threat of taking it outside, so to speak, you know, an implied threat of a physical altercation outside as being different from Reed simply invading social space and looming over somebody and pushing them into, you know, or at least making someone back up. Reed never touches anybody, and he doesn't say he's going to. So the county regards Kurtzels' behavior as more serious. That's what the county certainly claims, Your Honor. Well, so what reason do we have to disagree with that? Well, if you go into somebody's office, you get on top of them when they're sitting in the chair, you swear an expletive at them, you put your hand in their face so much that you cause somebody to back up into the corner when they're seated, and then you refuse to leave the office, that's an act of intimidation. That is not a threat. That is an act. That is pushing somebody into a corner. And so I don't really – I understand that Dunn County has made that argument, but I think common sense dictates that Mr. Kurtzels saying, you know, if you do that again, we're going to take you. We're going to go to the parking lot is a little different than coming into a supervisor's office and backing them up into a corner while you're swearing at them and shoving your hand into the face, so much so that the person who is in the office feels intimidated and threatened. What relevance is it, in your view, that it's Mr. Kurtzels who's in the supervisory position? Shouldn't the county be entitled to hold somebody to a higher standard? They could have made that argument, Your Honor, but they did not. There was never an argument in the district court proceeding that, well, we were holding him to a different standard. The argument was always that, well, the conduct was different, and more importantly, the sheriff said the reason I treated them differently is because I believed Reed and I didn't believe Kurtzels. That was his explanation. In other words, I believe the employee who doesn't have PTSD, but I don't believe the employee who has PTSD. And there's – so getting back, have I answered your questions, Judge? Yeah, that's fine. I was going to follow up because there is this other side issue about who knows about the PTSD and how much that word has spread through the office. And I will get to that when I get – if and when, Judge, I get to the second issue. All right. I wanted to briefly mention the other evidence in the record regarding the standards, which are reasonable belief based on objective evidence. There was objective evidence that was ignored by Dunn County, and that was specifically Captain Bigg, who was Mr. Kurtzels' direct supervisor, who had the most contact with Sergeant Kurtzels. And his response was that Mr. Kurtzels' reaction was understandable and that he did not believe that Mr. Kurtzels was a threat to coworkers. For some inexplicable reason, however, Dunn County completely left Mr. Bigg out of the decision-making loop on that. Also, as to reasonable belief and objective evidence, Dunn County hired an expert attorney with respect to employment law issues generally and the ADA specifically. And that expert attorney both issued a written conclusion in an email and then verbally talked to the Corporation Counsel. That information was passed on to the sheriff. And she indicated, the attorney is Mindy Dale, that the fitness for duty evaluation was premature and the fitness for duty evaluation was an overreaction. For whatever reason, Dunn County chose to ignore her opinion and recommendations. And finally, Dunn County – It was within its rights to do that. I mean, I didn't see – you can ask for advice, but asking for advice doesn't mean that you've sworn to follow every last word. That is true. However, when you're asking for advice because, as the sheriff said, he wasn't well-versed in ADA law, and the advice from somebody who is, is that this isn't appropriate, I think that goes to the reasonableness of the belief by the decision-maker. Could I ask you – I mean, this workplace, maybe these things relate to one another, but there certainly seems to be a hidden overtone that if you're asked to undertake a medical examination, a fitness for duty examination, that there's somehow something stigmatizing about that. And I wonder if Mr. Kurtzels had not only gotten his paid leave, which he does, and he got the 27 hours of overtime, suppose he'd gotten, you know, 60 hours of overtime with it, would we even be here? Yes, we would for a particular reason, and that is it was particularly stigmatizing to him and caused a reoccurrence of his PTSD because somehow the word got out that he was on administrative leave for three months because of a fitness for duty evaluation, and he had pointed questions from any number of individuals in the community about what happened, as well as it was used by his wife in post-divorce proceedings to try to take custody away from him. So it was particularly traumatic and stigmatizing in this particular instance. Okay. The third thing I just wanted to point out as to the first issue of was there reasonable belief and objective evidence is that Dunn County's own actions indicate that it did not have a reasonable belief. That is, it waited 12 days to place him on leave. It did not require him to turn in a service weapon. In fact, it didn't prohibit him from returning from work. I'm sorry, it did not prohibit him from going in to work. The second issue is whether or not Dunn County discriminated against Mr. Kurtzels based on disability by requiring the fitness for duty evaluation and placing him on leave. Just briefly on the issue of disability, Mr. Kurtzels clearly fits in the regarded as disabled prong if he was subject to a prohibited action because of an actual or perceived mental impairment, and he had an actual diagnosis of PTSD, and he disclosed that diagnosis to Dunn County, which leads into the question I think Your Honor asked previously about who knew what. This is a disputed issue of fact, clearly. Even before Kurtzels returned to leave, Captain Bigg, his direct supervisor, contacted HR because he was concerned about psychological issues with combat veterans, and he specifically asked about a fitness for duty evaluation for Kurtzels based upon him being in combat. When Mr. Kurtzels returned to work in 2004, he specifically disclosed his PTSD to Captain Bigg, and Captain Bigg specifically told him he would provide that information to Sheriff Smith, which is what would be expected in an organization like that with a chain of command. Similarly, when Mr. Kurtzels returned in 2014, he disclosed to Chief Deputy Gunness that he had PTSD, and Chief Deputy Gunness told Sergeant Kurtzels that he would provide that information to Sheriff Smith, again as would be expected with a chain of command. Both Captain Bigg and Deputy Gunness deny that this occurred, but despite that fact, it is undisputed. I believe that Mr. Kurtzels had multiple conversations with Chief Deputy Gunness regarding PTSD after the initial conversation. So based on that, I would submit that the district court properly concluded that Sergeant Kurtzels had adduced enough evidence to support a finding that Sheriff Smith knew about Kurtzels' PTSD. I'll acknowledge a reasonable jury could find the other way, but in this case, a reasonable jury could find both ways, and the court appropriately found so. So then the issue is really the causation issue, the but for, was this because of disability? All of the same evidence related to the reasonableness or meeting the requirements for the medical exam come in as to that issue. But I would like to address a few other things. I'm just going to warn you as you do that you're down to three minutes if you want to save any rebuttal. I see that, Judge. I'm going to finish on two points, and then I'll reserve the rest for rebuttal. One of Sheriff Smith's explanations of the differential treatment of Reed and Kurtzels is, as I said before, that he believed Reed and not Kurtzels. And there is significant evidence in the record that Reed was known to be somebody who was a pot stewer, somebody who stretched the truth, and somebody who had sour grapes against Kurtzels. So he had every reason to disbelieve Mr. Reed and every reason to disbelieve Mr. Kurtzels. Moreover, if Sheriff Smith believed Reed, he wouldn't have hired an investigator to investigate if Kurtzels violated the policy. Just two other points, and then at 13 minutes I'll reserve my time for rebuttal. The main point that Dunn County has made in this case is that it could not have discriminated against Mr. Kurtzels because he suffered from PTSD. Well, a reasonable jury could conclude that this is false based on the evidence of Mr. Kurtzels' disclosures, and if the jury concluded that, the jury could conclude that there is no reason for the Sheriff's Department to lie about the knowledge of disability other than to cover up the discrimination. And that leads to my last point, and then I'll leave the rest for rebuttal. There is this particular instance that occurred when Mr. Kurtzels came into the office of Sheriff Smith and Chief Deputy Moldoff, and they told him that he was going to be placed on leave and that he was going to be subject to the Fitness for Duty evaluation, and Mr. Kurtzels specifically called him out and said, this is happening because of my PTSD, isn't it? And neither of them, he actually said it two times, neither of them responded at all. They didn't give a verbal response, they didn't give any response. From that, I believe a reasonable jury could conclude that they were dissembling or covering up discrimination, because if they weren't, they would have said, no, it's not, or provided some explanation. I will reserve the rest for rebuttal. All right. Thank you. Mr. Wistrom. Good morning, Your Honors. May it please the court, my name is Oyvind Wistrom. I represent the defendant at Pelley-Dunn County with respect to this case. The county maintains that the district court properly granted summary judgment in this matter, finding that the county did not violate the Americans with Disabilities Act, and they placed Sergeant Kurtzels on paid administrative leave and ordered him to attend a Fitness for Duty examination before being permitted to return to work. As Mr. Reinhardt alluded to, there's two different claims here, the first being that the county unlawfully required a medical examination under the ADA, and the standard, as Mr. Reinhardt indicated, is whether or not the examination is job-related and consistent with business necessity. The county maintains that in the context of public safety-type positions, law enforcement positions like the one held by Mr. Kurtzels, the standard is much easier to meet. It's a lower threshold than in the general population. While you're on the standard, could I ask you, the county is the one with the burden of showing job-relatedness and consistency with business necessity, but do they have to show this by preponderance, or what do you think? I haven't seen any case law, Your Honor, that specifically identifies what that burden is, simply that it is the employer's burden to establish that. And I agree with the standard that it's reasonable and objective evidence, which I think we have in this case. Your argument is that it depends on the job, though, for a public safety job such as this one, for example. It's easier for an employer to order one of these fitness tests? Absolutely. Well, in the context of law enforcement where an individual like Sergeant Kurtzels carries a gun, he's entrusted with ensuring public safety, and he's out there as a law enforcement officer, ensuring that those officers are capable of performing their duty safely is more important because the consequences of sending an officer out in the field who isn't able or poses a threat to himself or to others is more significant ramifications. Sending a social worker out into the field who doesn't carry a gun, I think, is a different scenario. And this court has recognized that in a number of cases. For instance, the Kaufman case that we cited, too, and more recently in the Free Lane v. Village of Oak Park case from 2018, this court has recognized that there is a different standard. So with respect to law enforcement in situations like this, this court has even noted that not only is it reasonable for an employer to require a fitness for duty examination, it's the responsible thing to do. So after the incident here between Sergeant Kurtzels and Dennis Reed, and I do want to clarify with respect to the confrontation itself, Mr. Reinhart is seeking to argue that Reed was intimidating and harassing. The situation was this. Mr. Kurtzels was behind his desk and Mr. Reed walked into his office and it was a heated exchange. Nobody disputes that. But there was a desk between Mr. Reed and Mr. Kurtzels throughout the confrontation. And ultimately it was Kurtzels who made the threatening comment that the sheriff ultimately determined, potentially violated the county's workplace violence policy. So before requiring- Mr. Wistrom, I've read about that, and I guess maybe interjecting a slight note of pragmatism here. Are you telling me that this was the first time in the history of Dunn County that two guys had an argument and somebody said, well, you know, if this doesn't stop, we'll have to take it outside? This seems very implausible to me. There's certainly some evidence that there were heated exchanges between officers in the past and the use of profanity in the workplace had happened from time to time. But what distinguished this situation was the fact that Mr. Kurtzels made a threat. And the statement that the sheriff received from four or five different witnesses who were all in the office when this happened all pointed to Kurtzels as being the instigator or the aggressor in the confrontation, and he was the one that made the threat. There was one prior incident in the last 20 years in which another officer made a threat to a fellow officer, and that involved Deputy Z, as he's been identified as in this case. And Deputy Z made a statement that, you know, you better watch your back. He made that to two different officers. And in response to that threat, just like what happened here, the sheriff and the sheriff's department required Deputy Z to undergo a fitness for duty examination. So we agree that standard practice and past practice is a relevant consideration, and even though the department didn't have a formal policy, and luckily it wasn't a typical thing where officers are threatening each other and there's a requirement to do fitness for duty examinations, but in the one prior case where that was the case, the sheriff followed the same protocol and required Deputy Z to undergo a fitness for duty examination. I have one question. Go ahead, yeah, please. Just one question, because your opponent referenced that Kurtzels was a combat veteran, and he had military service somewhere during his absence, isn't that correct? I believe he did serve, he did have military service and he was in combat, yes, that's correct. Okay, well, that's an interesting engagement. I was in Vietnam and I was not in combat, and that's very serious. And if you've done that, I just wondered if that was part of the consideration of why he might need an extra examination, just because of that experience. That was absolutely not a factor. So Mr. Kurtzels returned. He was 12 years away from the department, active duty. He returned for a couple short stints, but he returned after 12 years in military service in 2014. And at that point, before there was any knowledge of the PTSD to anybody within the county, as Mr. Reinhart alluded to, the chief deputy, I believe it was, asked human resources, do we need to have a fitness for duty examination, because we have an officer returning from 12 years of military duty where he was in combat. And the response from human resources was no. So the decision was made at that point to allow him to return to work. It was after he returned to work where he allegedly informed Mr. Bigg and Mr. Gunness that he had been diagnosed with PTSD. But no, the fact that he had military service or combat service was not a factor in the decision two years later to require him to undergo a fitness for duty examination. While we're still on this point, I do want to talk a little bit about a case that was cited by Mr. Reinhart, the Wright v. Illinois Department of Children and Family Services, which is the primary case that Mr. Kurtzels relies upon to show that the fitness for duty examination was not job related and consistent with business necessity. First of all, that case involved a social worker with the Department of Health and Family Services who made a statement to a ward of the state that there were foster families available for her, even though there wasn't. And that threw this child into a manic frenzy and resulted in a near riot within the department. In that circumstance, this court found that the fitness for duty was not reasonable. But those are very different facts. One, we're not dealing with a law enforcement or public safety type position. There was no threats made by Ms. Wright. And Ms. Wright did not suffer from PTSD, contrary to what is alleged in the brief. It was the child, the ward of the state, who actually suffered from PTSD. So I think it's a very distinguishable case. There's a number of cases that we cited in our brief involving public safety type positions where circumstances less than what happened with respect to Reed and Kurtzall justified a fitness for duty examination. I think it's also relevant and important that- Mr. Wistrom, let me ask you this. Of what importance, if any, is the process the county used in coming to the decision that it wanted the fitness examination? So I understand, you know, Dr. Compton gets consulted and some other people gets consulted, and they decide to disregard the attorney's recommendation. But don't they go through a certain process before coming to the conclusion that this is appropriate? Yeah, it was a lengthy process, and that's part of the reason why it took 12 days before Mr. Kurtzall was placed on leave. First off, the sheriff did an investigation. He got statements from not only Reed and Kurtzall. He also got statements from five or six witnesses. He also consulted and talked to Kevin Bigg, and Bigg indicated that Kurtzall came to him after the situation and that he did not overhear anything. They then went through a process and consulted Dr. Campion and made the determination that a fitness for duty examination was appropriate. Mr. Kurtzall was on administrative-I'm sorry, he was in training from April 1 to April 15 out of town, so the plan was to allow him to finish his training and then put him on administrative leave, paid leave, as soon as he came back. When he came back two days early, they immediately had the meeting, notified him that he was being put on paid leave and was ordered to undertake a fitness for duty examination. Approximately five days later is when they first learned of the PTSD, and that was through a letter from Mr. Reinhart that was dated April 18. After that, the fitness for duty examination was postponed in order to allow the sheriff to consider and seek advice on the situation. He ultimately consulted with the county's administrative coordinator. He consulted with the corporation council, which is the county's attorney, and he also consulted again with Dr. Campion. All three of those individuals indicated that a fitness for duty examination was appropriate. There's a reference to Mindy Dale. Well, Mindy Dale was hired to do a workplace investigation into the incident of April 1. She was hired in late April, which was after the initial request for the fitness for duty examination was already made by the sheriff. And Mr. Reinhart acknowledges that the reason she was hired was to do an evaluation or an investigation into the incident of April 1, not to render an opinion as to the appropriateness of the fitness for duty. Now, she did provide her opinion that she thought it was maybe premature to do so, and ultimately the sheriff decided against following that opinion. He had contrary opinions, and Mindy Dale's opinion, as the district court noted, was the minority view. And he chose to proceed with the examination, and then rescheduled it for a later date. As far as the decision not to consult with Mr. Bigg, again, as I indicated, he was talked to by the sheriff. Ultimately, he was not involved or didn't overhear the incident. He wasn't consulted as far as whether or not a fitness for duty examination was appropriate or not. That decision was ultimately made by the sheriff and the chief deputy. So could I ask you this? I just want to tie this back to the PTSD. If a jury could find that the fitness examination was ordered because of this altercation, really because of Kirtzall's PTSD, would that be enough to go forward in your view? Well, that's only relevant on the second claim, which is that the county discriminated against him because of his PTSD. Because of his actual or at least perceived actual, we'll say actual. The district court thought there was enough there for the actual. Yeah, and we disagree with that. I think the court was very lenient in the standard of proof there. But leaving that issue aside, we don't believe there was enough evidence to establish that he performed his job functions to the employer's satisfaction by engaging in conduct threatening another officer. He was not meeting the reasonable expectations of the employer. And secondly, he also did not suffer an adverse employment action. Being put on paid administrative leave has been held repeatedly by this court and others not to constitute an adverse employment action. He was compensated not only for- He did miss out on some overtime hours, though. There's evidence that suggests he would have gotten something more like a minimum of 54 hours, not the 27 that he was paid. Yeah, that's completely speculative. What the county did was they looked at every shift that he could have requested or posted into during the two months that he was off work. And that amounted to 27 hours. Kurzweil's argument is, well, there might have been some additional time that I may have had to work at the conclusion of my shift to finish up my work for the day. It's absolutely speculative. And that type of speculative and unsupported overtime is not enough to establish an adverse employment action. In fact, if you look at the records in 2014, 15, and 16, Mr. Kurzweil actually had more overtime pay in 2016 than he did in 2015. So to say that he was compensated or paid less because of the administrative leave is completely speculative. The only concrete evidence that they had was the 27 hours, and those were shifts that he could have selected and he had the right to select. It doesn't mean that he would have selected all those. So, if anything, I think the county estimated on the high side by giving him credit for all 27 hours that he potentially could have taken other shifts, not knowing whether or not he actually would have done that or not. Absolutely. Okay, so your time is now up, so if you could just wrap up, that would be great. He worked until January 2019, didn't he? Yes, so after he was returned to work in July of 2016, he was paid the 27 hours of overtime, and he continued working for the department for another two years before he voluntarily resigned. So, yeah, the resignation two years later has absolutely nothing to do with this case. Right, so after all this dispute, he continued to work for the department. Correct, correct. So, in conclusion, I think the evidence here was sufficient to allow a reasonable employer, based upon objective evidence and part of the investigation established that from Sheriff Smith, that Kurtzfels posed a potential risk to himself or to others, and therefore it was job-related and consistent with business and faculty. And Mr. Kurtzfels failed to establish the four elements of discrimination under the ADA, so both claims were properly dismissed by the district court, and we ask that this court affirm. Thank you. Thank you. Anything further, Mr. Reinhart? Yes, Judge, I believe I have shortly less than a minute. So, first of all, on the overtime issue, it was hardly completely speculative. We have the records in the record of all the overtime he worked before and after the incident. There's testimony in the record, I think it's an affidavit, that much of his overtime was not related to filling other people's shifts. It was related to him coming in early, leaving late because of his duties as an investigation sergeant, and that was consistent over three or four years, so it's hardly speculative. The only other thing I wanted to say, Judge, in terms of the past practices of the county, first of all, this was, as you pointed out, one of only two fitness for duty evaluations during the 15 years Sheriff Smith was the sheriff. The other occasion wasn't similar, and the other occasion the deputy Z told his supervisor and a training officer that they needed to be looking over their shoulder, that they weren't safe at work, and that something was going to happen to them, as well as engaging in other bizarre behavior. And then the other point I want to make is there was an incident in 2001 while Sheriff Smith was deputy involving Dennis Reed and an excessive use of force where he body slammed a suspect into a vehicle. It was reported to administration and no medical examination was required. And I'll leave it at that, Judge. All right, well, thank you very much. Thanks to both counsel. The court will take the case under advisement.